# ILLINOIS CENTRAL RAILROAD COMPANY
## v.
## JAMES A. TROWBRIDGE.

*Railroads—Occupation of Part of Highway—Duty to Fence—Injury to Stock—Contributory Negligence—Comparative Negligence—Burden of Proof—Ordinary Care—Evidence—Instructions.*

1.   Under Sec. 62, Chap. 114, Starr & C. Ill. Stat., a railroad company must fence its track legally occupying a portion of a country road.

2.   In such cases, damages may be recovered for injury to horses being driven with due care on the highway, which result from failure to fence.

3.   Ordinary care is an essential element on the part of the injured party to authorize a recovery.

4.   In the absence of evidence showing negligence on plaintiff's part, a

*prima facie* case is made out by proving the injury and the absence of a fence.

5. Where it appears that the action of the animals injured was controlled by the conduct of their owner or driver, in such manner as to affect the right of recovery, the burden of proof is upon him to show due care.

[Opinion filed February 21, 1889.]

APPEAL from the County Court of De Witt County; the Hon. GEORGE K. INGHAM, Judge, presiding.

Messrs. MOORE & WARNER, for appellant.

A railroad company is not bound to fence its track at all places not excepted by the statute. The proper test in determining whether the company is required to fence at a designated place is, is the place a public one? Such a place is not within the spirit of the statute, and where a railroad track occupies a part of a public highway, the company is not required, and would not be permitted, to maintain a fence along the side of its track in such highway. 1 Thompson on Negligence, 519, 521; Patterson's Railway Accident Law, page 157; Railway Co. v. Hans, 111 Ill. 114; Railway Co. v. Chapin, 66 Ill. 504; Railway Co. v. White, 94 Ind. 257.

A man can not voluntarily place himself, by intoxication or otherwise, in a condition whereby he loses such control of his brain or muscles, as a man of ordinary prudence and caution in the full possession of his faculties would exercise, and by such loss of control contribute to an injury to his property, by an engine of a railroad company being propelled upon its road with ordinary care and caution, and then hold such company liable for such injury. Strand v. Railroad Co., 11 Western Reporter, 538.

The burden is on the plaintiff to show that he used ordinary care, and the court erred in instructing the jury on behalf of appellee that the burden of proof was on the appellant, and that unless they believed that the appellant had the preponderance of the evidence on that issue, they would find for the appellee. Dyer v. Talcott, 16 Ill. 300; Railroad Co. v. Jones, 20 Ill. 221–227; Railroad Co. v. Todd, 36 Ill. 409;

Railroad Co. v. Seirer, 60 Ill. 295–300; Railway Co. v. Dim-ick, 96 Ill. 42; Calumet Iron and Steel Co. v. Martin, 115 Ill. 358; Price v. Henagan, 5 Ill. App. 234; Railroad Co. v. Robin-son, 8 Ill. App. 140; Railway Co. v. Thorson, 11 Ill. App. 631; City of Galesburg v. Benedict, 22 Ill. App. 111; Shearman and Redfield on Negligence, Sec. 43.

Instructions given for the plaintiff in such cases should not omit to state that it is necessary for the plaintiff to show that he was exercising ordinary care. Railway Co. v. Freeman, 6 Ill. App. 608; Railway Co. v. Dimick, 96 Ill. 42.

When the plaintiff's own negligence has contributed to the injuries complained of, he can not recover by reason of the negligence of the defendant, unless such negligence of the defendant was gross as compared with that of his own. Rail-way Co. v. Berlink, 2 Ill. App. 427; Railroad Co. v. Brook-shire, 3 Ill. App. 225; Railroad Co. v. Colwell, 3 Ill. App. 545.

But it has never been the law of this State that the negli-gence of the parties could be weighed in a scale, when, if it inclined at all in favor of the plaintiff, he might recover. Earlville v. Carter, 2 Ill. App. 34.

If the appellee was guilty of negligence that contributed to the injury, then appellant would only be liable for gross neg-ligence, which implies wilful injury. Railroad Co. v. Todd, 36 Ill. 409; Railroad Co. v. Middlesworth, 43 Ill. 64; Railway Co. v. McGinnis, 71 Ill. 346.

Messrs. GRAHAM & MONSON, for appellee.

We think the only matter to be presented to this court for its serious consideration is embraced in the sustaining of the demurrer to the special plea. This presents the question to the court whether, under the statute (Sec. 62, Chap. 114, Starr and C. Ill. Stat.,) requiring railroad companies to fence their tracks, except at the crossings of public roads and highways, and within such portion of cities and incorporated towns and villages as are lotted and platted into lots and blocks, etc., and fixing their liability for a failure so to fence, they would be liable for not fencing where their track is partly built upon the margin of a public highway. The position taken by

counsel for appellant, " that the railroad company having built their track on a part of the public highway, by the license and permission of the public, they were not required and would not have been permitted to erect, in the public highway, a fence by the side of its track," is not warranted by the law. In the first place, if permission from the public would authorize the building of a railroad along and upon the margin of a public highway, that permission would carry with it the right and authority to operate the road and to comply with the requirements of the statute in respect thereto. Where the Legislature has made a law, as in this instance, pointing out specifically where and at what particular places railroad companies will not be required to fence, and requiring all other places to be fenced, we think there can be no room for construction, unless it might be to include places to facilitate the business of the public with the railroad company, and this court must enforce the law as they have made it. The law is a reasonable one, and was made to protect the property of the public along the lines of railroad companies from the dangers to stock in their operation, and it would be an unwarrantable and forced construction to say that the Legislature had made a law for the protection of property owners, requiring railroad companies to fence their tracks and yet allow them to leave the same exposed at the most dangerous places along their lines, and where fencing could be done without inconvenience, either to the railroad company in operating its road, or to the public in its use of the highway.

The sixth instruction is claimed by counsel to be erroneous, because it instructs the jury that the burden of proof was on appellant, to show negligence on the part of appellee. This, we think, was a proper instruction, and embodies the law applicable to this case. A *prima facie* case is made out by the plaintiff, when he shows that the railroad company has failed to fence, within the time prescribed by law, and the killing of stock. R. R. I. & St. L. R. R. Co. v. Lynch, 67 Ill. 149.

The special plea filed by the defendant charges negligence on the part of the plaintiff, and it assumes the burden of proving the plea.

In a prosecution under this statute it is not necessary to aver that the plaintiff was using care and diligence ; and if the defendant desires to make that issue, must do so by special plea ; and when so done must assume the burden of proving it.

The requirement to fence track and put in cattle guards is simply a police regulation, and the attorneys' fees fixed by the statute is a penalty for the violation of it. Railroad corporations are subject to police regulations the same as individuals, and any reasonable law passed by the Legislature for the protection of life and property, will not be held by this court or any other court of respectable authority, to be unconstitutional. O. & M. R. Co. v. Russell, 115 Ill. 52.

CONGER, J. The facts necessary to an understanding of this case are as follows :

In October, 1887, and for some years prior thereto, appellant had a line of railroad extending east and west through the county of DeWitt, known as the " Champaign and Havana Line." When this line was constructed, by the license and permission of the highway authorities, a part of its road-bed was placed along, in and on the south side of a public highway, commencing at a point about three miles west of the city of Clinton in said De Witt county, and extending westward about one and one-half miles, which has been used since that time by such license and permission for railroad purposes, the public continuing to use the remainder of said highway not actually occupied by the railway track for public highway purposes.

The railroad track comes onto the public highway from the south, and occupies a part of the south half of the same until it leaves it, not crossing it between the two points, and leaving ample room for public travel throughout the whole distance.

There was no fence between the railroad track and the part used by the public as a wagon road. The part of the highway used jointly is crossed by a creek called Barnett's Branch. The railroad crosses this creek by a trestle, and the wagon road by descending and ascending hills that are rather steep,

and from 100 to 150 yards long on each side. About three-fourths of a mile further west the highway and railroad track are crossed by another branch or ravine, which is crossed by the railroad by a bridge or trestle fifty or sixty feet long, and about fifteen feet high; except at these two branches or ravines the railroad track and the wagon road are on a level.

On the 15th of October, 1887, appellee, driving a team of horses, was passing along this portion of the highway about seven o'clock in the evening, when his team ran away, broke loose from the wagon and ran upon the track and into the last mentioned trestle, or bridge, where about eight o'clock of the same night they were struck and killed by a locomotive on appellant's road. The night was dark so that the engineer could not see the horses in the bridge until too late to stop, and no negligence is chargeable to him.

To the declaration there were filed three pleas: first, the general issue, and two others.

The second plea avers that at the said times and places in said declaration mentioned, defendant's said railroad was constructed and then and there being operated along and upon a part of a certain public highway then and there being in said county, and had been so constructed and operated by the license and permission of the public for more than twelve years prior thereto, the public then and there using and occupying the remainder of said public highway at said places, and that said places were then and there within a part of said public highway; and the defendant was not then and there required or allowed to either construct or maintain either a fence or cattle guards at said places to prevent horses from getting upon said track, and that said horses got upon said track from said highway and were killed at said places, without any fault or negligence on the part of the defendant, its agents or servants.

The third plea avers that at the said times when, etc., the plaintiff carelessly, negligently and wilfully caused and permitted said horses to run away and get upon said track and into a bridge, then and there being, of the defendant, and then

and there carelessly, negligently and wilfully permitted said horses to remain in said bridge until they were approached and struck by an engine then and there being propelled by the defendant along its said road with all due care and caution, and that defendant used all possible means to prevent any injury being done said horses, after learning that they were on its said track and in its said bridge, and that said carelessness, negligence and wilfulness of the plaintiff directly contributed to the deaths of said horses.

A demurrer was sustained to the second plea, and issue was joined and trial had upon the first and third, which resulted in a verdict and judgment against appellant for $275.

It is insisted that the second plea presents a good defense, and that it was error in the court below to sustain a demurrer thereto.

The precise question has not been passed upon by the Supreme Court, nor have we been cited to any authority that, in our judgment, squarely decides the question presented by the plea. In Thompson on Negligence, 521, it is said:

" The proper test, as deduced from the American cases, of whether or not a particular place ought to be fenced by a railroad company, seems to be the fact of its being in law a *public place*, joined with the fact of its practical user by the public. Although it be in law a public place, still, if for any reason it be not used and is not likely to be used as such by the public, the road must be fenced."

We are inclined to think if the public authorities consented that the railroad company might use a part of the highway for its road-bed, such consent would carry with it the right and authority to do all that was necessary in its operation and management to comply with the law. The law requires the company to fence its road, except at the crossing of public roads and highways, and within such portions of cities and incorporated towns and villages as are platted into lots and blocks, etc. The place described in the plea is not within the letter of the exceptions, nor do we think it is within the spirit.

The object to be attained by the law in requiring railroad tracks to be fenced, is to protect persons and property upon

the railroad, and animals running at large, from being injured. In this case the ordinary dangers are greatly increased. For a mile and a half the highway and railroad run side by side, but a few feet apart, exposing persons passing along the highway with teams, to the danger of collision with passing trains, when such teams should become frightened and unmanageable.

, When the authorities surrendered this portion of the highway and the company accepted it, it must be presumed that both parties intended that the law should be complied with by inclosing that portion so surrendered with a fence, and thereby give the protection to both the company and the public, that the fencing law was intended to supply. We are, therefore, of opinion that the demurrer to the second plea was properly sustained.

The second instruction for plaintiff, after alluding to the duty of the company to fence, uses this language: "The neglect of the defendant to erect and maintain suitable and sufficient fences as required by law, and as explained in the preceding instructions, fixes the liability of the defendant for the killing of said horses, provided the plaintiff was guilty of no negligence contributing to the injury, or if guilty of negligence, that the negligence of the defendant in not fencing was of a higher degree than that of the plaintiff." The fourth instruction told the jury that though the plaintiff might be guilty of negligence in permitting the horses to escape and get upon the track, still he could recover if the defendant was guilty of greater negligence in failing to fence; while in the sixth instruction the jury are told that upon the question of the plaintiff's negligence, the defendant has the burden of proof.

These instructions are all erroneous. We are referred to R. R. I. & St. L. R. R. Co. v. Lynch, 67 Ill. 149, as authority for these instructions, in which the following language is used by the court:

"The third (instruction) informed the jury that although the company had neglected to fence its road, yet the plaintiffs must prove that the injury resulted from such failure to fence, and must prove negligence in other respects. This

required more of the plaintiffs than the law does.    They need
only prove the injury by the trains of the company and its
neglect to fence, and thus a *prima facie* case of liability is
made."

.  This is the rule in all cases of injuring animals by railroad
trains where the agency or control of the owner or those in
charge of them is not a factor in the case.

But when it appears that the actions of animals are con-
trolled by the conduct of the owner, or others representing
him, in such a way as to affect the right of recovery, then it
devolves upon such owner to show affirmatively upon his part
the proper degree of care, before he can recover.

It was the duty of the company to fence its road, and in
failing to do so it was guilty of negligence; but the failure of
the company to perform its duty would not absolve the
plaintiff from using ordinary care to prevent the injury to
his horses.    St. L., A. & T. H. R. R. Co. v. Todd, 36 Ill. 409.

The duty of using ordinary care rested upon the plaintiff,
and it devolved upon him to show such care or he could not
recover; hence it was error to instruct the jury that upon
this question the burden of proof rested upon the defendant.

The second and fourth instructions are erroneous in not cor-
rectly stating the doctrine of comparative negligence.    In the
second it is said, if the negligence of the defendant was of a
higher degree than that of the plaintiff, while in the fourth
the jury are told that if the defendant was guilty of greater
negligence than the plaintiff, in either of such cases, the plaint-
iff might recover.    In Willard v. Swanson, 18 N. E. Rep. 548,
(1888, not yet recorded), our Supreme Court say: " When the
injury is not wilful, the law is well settled that a party can not
recover for an injury received, unless it appears from the evi-
dence that he exercised ordinary care—such care as a reason-
ably prudent person will always adopt for the security of his
person.    This doctrine was announced at an early day in this
court in R. R. Co. v. Jacobs, 20 Ill. 488, and it has been reiter-
ated in numerous cases since.    R. R. Co. v. Johnson, 103 Ill.
517.    The fact that the defendant may have been guilty of
gross negligence does not of itself authorize a recovery.    A

duty always rests on the injured party to exercise ordinary care, and unless that duty has been observed a recovery can not be had. In other words, ordinary care is an essential element on the part of the injured party to authorize a recovery."

The doctrine of comparative negligence as applied to cases where the injury is not wilful, seems to be shorn of all practical meaning. A plaintiff can in no case recover unless he has used ordinary care, no matter how gross the negligence of the defendant, while if he has used ordinary care, his whole duty has been performed, and a comparison of his conduct with that of the defendant as to the question of negligence would seem to be useless.

We think the court below should have allowed more latitude in the examination as to the conduct and condition of the plaintiff, both upon the day of the accident and before.

If it could be shown that plaintiff had been drinking heavily for some days prior to the accident, it would be proper fact to go to the jury, that they might determine how far, if at all, it affected his mental or physical capacity to act with ordinary prudence and caution at the time his team escaped from his control.

Upon a new trial the declaration can be amended so as to include the attorney fee.

For the errors indicated, the judgment of the court below will be reversed and the cause remanded.